Pcarson, J.
 

 Both parties claim under William Skinner. The lessor deduces title, by a sale and deed of the Sheriff in 1845, under a judgment against Skinner, in August, 1841, and executions regularly issuing thereon up to
 
 *137
 
 the sale. The defendant deduces title, by a deed of trust, executed by Skinner to one James Skinner, in April, 1841, and a deed from James C. Skinner to himself in 1846.— The case, therefore, turns upon the validity of the deed of trust. It conveys to James Skinner the land sued for, and several slaves, and all the other visible property of William Skinner, in trust to sell, and out of the proceeds to pay certain debts, which constitute the first class ; and, if there is any surplus, to apply it to the payment of the debts of the seeond class. It provides that the property is not to be sold until after the expiration of three years from the date, and then, if any of the debls of the second class shall remain unpaid, the trustee may be required, by such portion of the creditors, of the second class, as represent the greater interest, to proceed to sell; and he is, thereupon, authorised to sell the property at public auction, on a credit of six months. It further provides, that, until a sale is made, William Skinner shall remain in possession of all the property, and Skinner shall not be held responsible for the same, while it remains in the possession of the said William.
 

 To account for this delay of three years, and the stipulation that, during the time, the debtor was to be allowed to keep possession of the property, and receive the profits, without responsibility on the part of the trustee, — the defendant examined Thomas F. Jones, Esq., James Skinner, and William Skinner. Their testimony was, in substance, that William Skinner was a merchant, and also carried on a small farm. In the Spring of 1841, he found himself very much embarrassed; he was indebted to. James Skinner, who was his brother, in a large amount, chiefly for money borrowed of him, as guardian; he also owed large sums to several of his intimate friends. These creditor's were willing to give him indulgence, provided their debts
 
 *138
 
 were secured, and he was anxious to give them the preference, and supposed that his land, negroes, and all of his other chattel property, w ould be about sufficient for that purpose. Besides these debts, he owed several merchants for goods, to quite a large amount, and in taking an estimate of the notes, book debts, &c. due on account of the store, he supposed this fund, if he was successful in making collections, in additioü to the profits of his farm, would enable him, in three or four years, to pay off most of the debts due to merchants, and several small debts due in the jieighbo rhood, which he did not purpose to secure; and he communicated this to his brother, and they called on Mr. Jones, a highly respectable gentleman of the bar, to draw the deed of trust. They stated over the above circumstances to Mr. Jones, and told him their wish was to postpone a sale of the property as long as the law would allow, and suggested four years. He advised them that time was too long, but thought the deed would not be invalidated by a delay of three years, which was inserted, and the deed was executed and registered. William Skinner stated, that he was much mistaken in reference to the amount which he had hoped to realise from the notes and debts, due on account of the store, and, although the nominal amount was some $4,000, his collections fell far short of the amount .of debts secured in the second class, and the result was, he proved to be insolvent to a large amount. He accounted for his want of success in making collections, by the fact, that, in 1842, there was a great pecuniary pressure, and an almost total failure in that section of the State : this fact .was also stated by Mr. Jones.
 

 - The plaintiff’s counsel insisted, that the deed of trust .was fraudulent upon its face, and should be so adjudged by the Court. His Honor was of opinion, that the question of fraud was one of fact, to be submitted to the Jury.
 
 *139
 
 For this the plaintiff excepts. The Court then submitted the ease to the Jury, with general instructions as to the question of fraud.
 

 The plaintiff’s counsel then requested the Court to instruct the Jury, that, upon the face of the deed of trust, there was
 
 •prima facie
 
 evidence of fraud, and that the de-‘ tend ant had offered no evidence to explain or rebut this presumption. The Court declined giving the instruction, and for this the plaintiff excepts.
 

 The first exception is unfounded. The very question is settled by the case of
 
 Hardy
 
 v
 
 Skinner,
 
 9 Ired. 191, when this same deed of trust was submitted to the consideration^ of this Court, and the matter is so elaborately discussed, as to make it unnecessary to add another word.
 

 The second exception is well founded. By fhe case of
 
 Hardy
 
 v
 
 Skinner,
 
 it is decided, that, upon the face of this deed of trust, there is a presumption of fraud; and the single point is, was there any evidence to rebut this presumption? The plaintiff had a right to present this point, as upon a demurrer to the evidence; that is, admitting all of the testimony offered by the defendant
 
 to
 
 be true, and admitting all the inferences that can properly be drawn from it, there is no evidence to rebut the presumption,— and to ask for a direct opinion of the Court upon that question. Consequently, it is error to refuse the opinion; and to leave the case with the Jury, upon a general charge as to the matter of fraud. What constitutes fraud, is a question of law. In some cases, the fraud is
 
 self-evident:
 
 when it is the province of the Court so to adjudge, and the Jury has nothing to do with it. In other cases, it depends upon a variety of circumstances, arising from the motive and intent; then it must be left as an open question of fact to the Jury, with instructions as to what, in law, constitutes fraud. And, in other cases, there is a presumption
 
 *140
 
 of fraud, which may be rebut led. Then, if there is any evidence tending to rebut it, that must be submitted to the Jury; but if there is no such evidence, it is the duty of the Court so to adjudge, arid to act upon the presumption. Fraud is very subtle, and frequently eludes the grasp, both of the Court and J ury. When, therefore, the Court has hold of it, there is no reason for passing it over to the Jury, unless there is some evidence that will justify them in coming to the conclusion that
 
 the
 
 presumption is rebutted.
 

 In one case, it had been decided, that there was a presumption of fraud against this deed of trust, and it was narrowed down to this question : Is there any
 
 evidence to
 
 rebut this presumption? The legal effect of-the deed is to delay and hinder the creditors named in the second class, and to hold them at arms length for three years; because, so far as the personal property was concerned, it could not be reached by an execution, and the
 
 equity of redemption in the land, only,
 
 could be sold, which would impose on the purchaser the necessity of going into equity to redeem, by paying
 
 all the debts.
 
 Of course, there would be -no purchaser, so that, in fact, the admitted design was to hokPoff the creditors of the second class, for three years, during which time the debtor was to remain in possession, and the receipt of the profits upon his own responsibility. What motive does the evidence assign for this ? The creditor wished to prefer certain creditors ; true, he had a right to do it, but he was bound to make an honest preference.— He could have given them the very same preference, and allowed the sale to be made within a reasonable time ; so, his wish to give the preference furnishes no reason for the delay, and leaves it as a new pretext, under which to provide for a benefit to himself. But again, it is said, the evidence shows, that he expected to be able, within" the
 
 *141
 
 three years, to make large collections from his books, which he could do by taking in grain, &c., much better than a trustee; and he left his notes and accounts out of the deed of trust, for the purpose of settling them up himself. Grant it: but does this furnish any reason why his other property should not, in the meantime, have been appropriated to the payment of his debts, so as to stop interest and close up the business ? Upon what principle does this self-constituted agency of his rest ? He, being
 
 insolvent,
 
 or, at least, greatly embarrassed, and on the verge of insolvency, as it afterwards turned out, assumes the right to defy his creditors, and enjoy the use of his property for three years, • — in other words, to keep his property, and pay his creditors, when he finds it convenient. This assumption shocks all notion of honesty and fair dealing, and cannot be tole, rated. The cases of
 
 Lee
 
 v
 
 Harnagan,
 
 8 Ired. 741, and
 
 Young
 
 v
 
 Booe,
 
 11 Ired. 347, were cited for the defendant. The distinctions are obvious.
 

 Per Curiam.
 
 Venire de novo
 
 awarded.