\* G. W. HELMS v. J. L. GREEN.

*Deed, How Attacked—Pleading—Evidence—Witness—Fraudulent Conveyance.*

1. In actions for the recovery of land, as formerly in the action of eject-ment, any deed offered as a link in a chain of title is thereby exposed to attack for incapacity in the maker, or because it was void under the statutes of frauds (13th and 27th Eliz.), though it may not have been mentioned in the pleadings; but where a party seeks to set aside a conveyance because of a fraudulent combination to prevent a fair competition of bidders, he must allege the fraud now as he was required formerly to file his bill in a Court of Equity.

2. *The Code* (§ 579) abolishes the action to obtain discovery under oath, and substitutes for it a remedy in harmony with the code system by allowing a party, in support of the allegations of his complaint, or of a cross-action set up in a counter-claim, after eliciting admissions from his adversary by verifying his pleadings, to examine such adversary party. as to facts within his peculiar knowledge, both before and at the trial of the action.

3. A party who puts his adversary on the stand gives him an oppor-tunity to testify on his own behalf on cross-examination, and waives his right of impeaching him by attacking his credibility, but retains the privilege of contradicting him by testimony of other witnesses inconsistent with his.

4. The notorious insolvency of a bargainor in a deed executed to defraud his creditors is a circumstance tending to show that the bargainee, his son-in-law, who lived in the same neighborhood, participated in the fraud.

5. Where a deed was executed to evade the payment of any judgment that might be recovered against the grantor in an action for slan-der pending at the time of its execution, it is fraudulent, under 13th Eliz. (*The Code*, § 1545), as to his creditors.

6. The fact that it is exclusively within the power of persons so nearly related (as the defendant in this case and his father-in-law, the grantor Hinson) to explain every suspicious circumstance, if they

---

\* Head-notes by AVERY, J.

did act in good faith, and the neglect to do so voluntarily, or the failure of one of the parties, when he was forced to go upon the stand. to throw light upon it so as to fully establish, if their explanation were credited, the *bona fides* of the transaction, is to be considered as due to inability to show that their conduct was consistent with an honest purpose.

7. The presumption arises rather from the peculiar knowledge on the part of parties to a deed that would either confirm or remove suspicion raised by circumstances in evidence as to the embarrassment of the grantor and his relationship to the grantee than from any positive testimony as to the persons actually present at the transaction.

8. Badges of fraud are suspicious circumstances that overhang a transaction, and where the parties to it withhold testimony that it is exclusively within their power to produce, and that would remove all uncertainty, if believed, as to its character, the law puts the interpretation upon such conduct most unfavorable to the suppressing party as it does in all cases where a party purposely or negligently fails to furnish evidence under his control and not acceptable to his adversary.

9. It was this well-established rule of evidence that was laid down in *Reiger* v. *Davis*, 67 N. C., 189, but it was misconstrued and incorrectly stated in *Tredwell* v. *Graham*, 88 N. C., 208.

This was an ACTION begun in the Superior Court of UNION County, N. C., on September 12th, 1883, for the recovery of a tract of land situated in said county, and tried at February Term, 1889, of said Court, before *Clark, J.,* and a jury.

The following is a statement of the facts as far as is necessary to an understanding of the exceptions made by defendant, and which are the basis of the appeal. The plaintiff showed title out of the State, and in one W. B. Hinson, by introducing in evidence grants from the State to one Pinion and one McCollum, and subsequent and successive conveyances to said Hinson; and then offered in evidence a deed from the Sheriff, dated February 15th, 1882, regular in form, and duly proven and recorded, purporting to convey to plaintiff the land sued for, and reciting that the sale was had under execution issued upon judgment in favor of one

C. N. Simpson, administrator of W. H. Simpson, and against said W. B. Hinson, which judgment was docketed in the Superior Court of Union County, N. C., on the 21st day of August, 1881, as appeared by the recitals in the Sheriff's deed aforesaid; and upon the execution and judgment dockets of said Court, which were offered in evidence. After the introduction of these conveyances, all of which were admitted to cover the land in dispute, and after evidence as to defendant's being in possession of the land in dispute, and as to annual rental value of said land, the plaintiff rested his case. No exception is made, or was made. upon the trial, to the evidence, charge of the presiding Judge, or verdict of the jury as to the questions of possession and damages. After plaintiff rested his case, the defendant offered in evidence a deed to himself from said W. B. Hinson and wife, dated March 30, 1881, proven and recorded in April, 1885, reciting a consideration of $300 as the amount of the purchase-money paid, a copy of which deed, with the probate thereof, is hereto appended as part of this statement of the case, and marked "A." It was admitted that this deed covered, or purported to convey, the land in dispute. After the introduction of this deed the defendant rested.

*Exception 1.*—Plaintiff then called defendant to the witness stand, had him sworn, and proposed to elicit from him testimony tending to prove said deed, executed to him by Hinson and wife, was fraudulent and inoperative. The defendant objected on the ground that said deed, as he claimed, could not be attacked for fraud in this proceeding, but that an action against the parties to said deed, for the purpose of having it cancelled for fraud, was plaintiff's only remedy by which he could attack said deed. Objection overruled, and defendant excepted.

The witness (defendant) then proceeded to testify that he was a son-in-law of W. B. Hinson; that the deed to him was dated the day he got it; that he took possession of the land

shortly after he got the deed; that he was to pay $200 for the land; that he did not agree to pay more; that he gave his note to Hinson for the $200; that he has never paid anything on the note; that he gave no security for the payment of the note, nor did he give any mortgage to secure the note; that he didn't know whether or not Hinson was insolvent at the time he executed the deed to witness; that witness was never examined in supplemental proceedings taken out against Hinson; didn't know of Hinson conveying away other lands about that time to his (Hinson's) other son in-law; didn't know whether Hinson, at the time of the conveyance to witness, retained sufficient property to pay his (Hinson's) debts; that he heard that Hinson was put in jail for refusing to testify in supplemental proceeding instituted against him; that witness at the time of said conveyance, and from then to the trial of this case, was not worth more than his homestead and personal property exemption; that witness, and wife of witness, own 148 acres of land besides the land in dispute in this case; that the deed for the 148 acres was made to witness and his wife jointly, and was partly a gift and partly a purchase; that one hundred acres was given and forty-eight bought, and witness paid $240; that Hinson conveyed this 148-acre tract to witness and his wife four or five years after witness married Hinson's daughter; that witness now owns $150 worth of personal property, and is worth about the same now that he was when the deed for the land in dispute was executed to him. Hinson was considered good, or solvent, till a short time before he executed the deed to witness for the land in dispute.

Witness, on cross-examination, testified that there was no understanding between him and Hinson that he was to take the deed for the land in dispute for the purpose of keeping off Hinson's creditors; that, in his opinion, the land conveyed to him (the land in dispute) was not worth more than

$200, it being in litigation or in dispute at the time it was conveyed to him

*Exception 2.*—The plaintiff then proposed to offer further evidence, tending to attack said deed from Hinson to Green for fraud, and the defendant objected, and assigned as the ground therefor, that the plaintiff, having introduced the defendant as his witness, could not offer evidence tending to impeach or contradict him, but was bound to accept as true and conclusive the testimony of said witness. The Court overruled the objection in part, stating his opinion of the law to be that the plaintiff was not allowed, and would not be allowed, to introduce evidence for the purpose of impeaching the defendant, but that he would allow the plaintiff to show, if he could, a different state of facts from those as testified to by the defendant. The defendant excepted. Plaintiff then introduced as a witness, J. J. Medlin, who testified that he was, and had been for a long time, acquainted with W. B. Hinson; that in the year 1881, and at the time of the execution of said deed from Hinson to Green; it was generally reported that W. B. Hinson was insolvent.

G. W. Mullis, a witness introduced by plaintiff, testified that at the time of said conveyance from Hinson to Green, the said Hinson was generally reported to be insolvent; that the defendant, J. L. Green, at the time of said conveyance, was residing, and had resided for some time prior thereto, in about a mile or one mile and a half of the said W. B. Hinson; that D. R. Pusser, J. W. Love and the said J. L. Green were the sons-in-law of said Hinson, and were such sons-in-law during the year 1881, and for some time previous thereto.

It was in evidence by the plaintiff, who was examined as a witness in his own behalf, that the tract of land in dispute, and which was sued for, contained about one hundred and twenty-five acres, and was worth $5 or $6 per acre at the time of conveyance from Hinson to Green; and one E. H.

Hinson, who was likewise examined as witness for plaintiff, testified the same as G. W. Helms as to the quantity and value of the land at the time of said conveyance, *i. e.*, that there were about 125 acres of it, and that it was worth $5 or $6 per acre  The witnesses Helms and E. H. Hinson both testified that in March, 1881, when said conveyance was executed, the said W. B. Hinson was generally reported to be insolvent, and was much involved in debt.

The witness Hinson, also testified that at the time said deed was executed, he (the witness) had a suit pending against said W. B. Hinson, in which he had sued for the recovery of $10,000, on account of alleged slanderous charges made against him by said W. B. Hinson, and that W. B. Hinson, before witness sued him, was solvent and worth $3,500 or $7,000.  It was also in evidence that at the time of the execution of said conveyance to Green, one James Mullis had commenced suit against said W. B. Hinson, for the recovery of $5,000 on account of alleged slanderous charges made against said Mullis by said W. B. Hinson, and that said suit afterwards abated on account of the death of plaintiff Mullis.  It was in evidence that the said suit of E. H. Hinson against said W. B. Hinson was compromised sometime after the execution of said deed from Hinson to Green.  The execution dockets of the Superior Court of Union County, N C., were introduced, showing judgments which were rendered and docketed against said W. B. Hinson after the execution of said deed to Green; one for $179.25 and interest, one for $291.15 and interest, and the other amounting to about $60 and costs, all of which were rendered on debts contracted by the said W. B. Hinson several years before he executed said deed to Green.  There was evidence that the two first named of these judgments have since been paid by T. L. Love and J W. Love, while the last named judgment was one on which an execution issued and a sale was had by the Sheriff on February 6th, 1882, at

Helms *v.* Green.

which the plaintiff became the purchaser and took the deed, dated February 15th, 1882, as hereinbefore stated. The judgment and execution upon and under which said sale was had were introduced, showing Sheriff's return and allotment of exemptions to said W. B. Hinson, and that the said land in dispute in this action and which was sold by the Sheriff, was a part of the excess of the homestead allotted said Hinson. The note upon which said judgment was rendered was introduced in evidence, and was dated October 1st, 1874. It was in evidence that T. L. Love, the subscribing witness to the deed from Hinson to Green. was a brother to J. W. Love, one of the sons-in-law of said W. B. Hinson. It was in evidence that the said W. B. Hinson was committed to jail for refusing to be examined in supplementary proceedings instituted upon the judgments, which were afterwards paid by said T. L. Love and J. W. Love.

Plaintiff offered in evidence further the following deeds from W. B. Hinson to his sons-in-law D. R. Pusser and J. W. Love.

Deed to D. R. Pusser, dated December 23d, 1880, conveying a tract of land, and reciting a consideration of $1,000 as paid, and to J. W. Love. dated February 14, 1880, conveying a tract of land, and reciting a consideration of $275 as paid; a deed to J. W. Love, dated December 24, 1880, conveying a tract of land, and reciting a consideration of $325 as paid; and another deed to said J. W. Love, dated 11th day of March, 1881, conveying a large body of land and reciting a consideration of $6,500 as paid

Plaintiff closed his case, and the defendant offered in evidence the tax lists or tax returns for the years 1881 and 1882, showing the property returned by W. B. Hinson for taxation; the return for the year 1881, showing personal property to the amount of $1,060, and no realty, and the return for the year 1882, showing personal property to the

amount of $1,585, and no realty  The personal property returned for taxation in said years, according to the tax returns, consisted almost entirely of unspecified property. The defendant then closed his case.

The following are the issues submitted to the jury, and their answers thereto:

1. Is plaintiff the owner and entitled to the possession of the premises claimed in the amended complaint? Ans. Yes.

2. Does defendant wrongfully withhold possession thereof? Ans. Yes.

3. What damage has plaintiff sustained thereby? Ans. $2 per year.

There was a verdict for the plaintiff, and defendant moved for a new trial, and filed the following exceptions as grounds for his said motion:

Defendant's motion for new trial and exceptions in its support are as follows:

1. For that the Court erred in permitting the plaintiff to attack the deed made by W. B. Hinson to defendant for fraud, without giving notice thereof in the pleadings, and without bringing a direct proceeding for that purpose, as set forth in the first exception stated.

2. For that the Court erred in permitting the plaintiff to offer evidence tending to contradict the witness J. L Green, whom plaintiff had put on the stand, because the plaintiff had thereby vouched for the credibility of said witness, and could not be heard to attack him; and that while plaintiff was permitted to show a different state of facts from those testified to by said witness, for the purpose of showing he was mistaken, yet that rule was not applicable here, for the matters testified to by the witness must have been true or false to his knowledge.

3. For that his Honor erred in giving the instructions asked for by the plaintiff, and refusing the 7th, 8th and

9th instructions asked for by defendant, and in modifying the 4th, 5th and 6th instructions asked for by defendant.

*Mr. J. J. Vann,* for plaintiff.
*Messrs. D. Covington* and *H. B Adams* for defendant.

AVERY, J.—after stating the facts: At an early period in the judicial history of this State, it was held that courts of law might hear evidence and allow a jury to pass even incidentally upon the question, whether a deed was void for fraud in the factum or under 13th or 27th Eliz. (*The Code,* §§ 1545 and 1546.) *Logan* v. *Simmons,* 1 Dev. & Bat., 16. Hence, in the trial of actions of ejectment where the question arose whether a deed, relied upon by either of the parties as a part of a chain of title, was executed to hinder, delay or defraud creditors; evidence was heard to attack or sustain such conveyances, though the action was not brought to directly impeach its character. *Lee* v. *Flannagan,* 7 Ired., 471; *Hardy* v. *Skinner,* 9 Ired., 191; *Hardy* v. *Simpson,* 13 Ired., 132; *Black* v. *Caldwell,* 4 Jones, 150; *Winchester* v. *Reid,* 8 Jones, 377; Wharton on Evidence, § 931.

Where land has been sold at execution sale, a party seeking to set aside the Sheriff's deed because of a fraudulent combination to prevent a fair competition among bidders, was compelled to file his bill formerly in a Court of Equity and must now allege such facts in his pleadings as are relied upon to establish the fraud. *Young* v. *Greenlee,* 82 N. C., 346. But in actions for the recovery of land, as in the old action of ejectment, any deed offered as a link in a chain of title is thereby exposed to attack for incapacity in the maker or because it was void under the statute of frauds, though it may not have been mentioned in the pleadings. *Jones* v. *Cohen,* 82 N. C., 75; *Fitzgerald* v. *Shelton,* 95 N. C., 519. It is this distinction that makes the authorities cited and relied on by defendant's counsel inapplicable in the case before us.

The defendant asked the Court to instruct the jury that, " (4) even if said deed was executed by W. B. Hinson with the actual intent to defraud his creditors, still the plaintiff cannot recover unless the plaintiff satisfies you that the defendant Green co-operated in said fraudulent intent, or had notice thereof."

The Court gave the instruction, adding the words, " unless it was a voluntary deed, and not sufficient property was retained to pay Hinson's debts." And the defendant further prayed for the charge that, "(5) even if W. B. Hinson was notoriously insolvent, and the defendant knew it at the time said deed was executed, the law raises no presumption that Green knew that Hinson intended to defraud his creditors," to which the Judge added, " It is a circumstance, however, to be weighed."

It was eminently proper that the qualifying words should have been attached by the Court in both instances. There was evidence tending to show that Hinson was embarrassed with debt, and that he did not retain property sufficient and available to discharge his indebtedness. A number of witnesses testified that he was reputed to be insolvent. The defendant Green claims under a deed from Hinson and wife, executed March 20th, 1881, but proven and recorded in April, 1885. He offers the tax lists, showing that for the year 1881 W. B. Hinson returned $1,060, and for the year 1882, $1,585, consisting entirely of personal, and almost exclusively of "unspecified property." We cannot concede the correctness of counsel's position that the evidence tending to show fraud was rebutted by the return of property, the nature of which was not pointed out, and most of which, we must infer, could not have been reached by an ordinary *fieri facias*. There was evidence that made it proper that the Judge should modify the fourth instruction as he did. Hinson had not only disposed of all of his lands to different members of his family, at what witness said were inadequate

prices, and afterwards returned for taxation property that did not appear to be within the reach of the ordinary process of law to subject it for debt, but the execution of the deed when no persons but members of the family were present, as insisted, the failure to register, the great discrepancy between the recited and alleged prices, the wide difference between the aggregate amount recited as consideration in the deeds to different members of his family and the amount upon which Hinson paid taxes soon after, and other circumstances, certainly justified the argument to the jury, and would have supported a finding by them that the deed to Green was voluntary, and that in fact no money was paid by him to Hinson for the land.

The fact that the defendant Green was examined by the plaintiff as a witness, does not preclude the latter from insisting before the jury that his testimony was not, and that of witnesses who contradicted him was true, nor prevent the Judge from submitting any view of the law predicated upon that hypothesis.

*The Code*, § 579, abolishes the action to obtain discovery under oath, and provides that no "examination of a party shall be had on behalf of the adverse party except in the manner prescribed in this chapter." The four succeeding sections, after providing how a party may be compelled to *appear and answer both before and at the trial, conclude* with the provision (section 583) that "the examination of the party thus taken may be rebutted by adverse testimony." The rules prescribed in that chapter for regulating such examinations, interpreted according to their plain import and construed in connection with section 268 of *The Code*, furnish a substitute equal to the old bill of discovery as a means of eliciting material facts within the peculiar knowledge of an adversary party, and which, moreover, harmonize with the general idea of the code system by obtaining the discovery and the remedy sought by the party asking it in

the same action. *Coates* v. *Wilkes*, 92 N. C., 382. The allegations of the complaint, and every material allegation of new matter constituting a counter-claim in an answer, directly admitted or not denied, have the effect of a finding by a jury. *Bonham* v. *Craig*, 80 N. C., 224. When the pleadings are complete, other material facts may be elicited from an adversary by examination in support of the main action or the cross-action set up in the counter-claim, if the disclosures by way of admissions are not deemed sufficiently full. A party who puts his adversary on the stand gives him an opportunity to testify on his own behalf on cross-examination, and waives his right of impeaching him by attacking his credibility, but retains the privilege of contradicting him by testimony of other witnesses inconsistent with his. *Coates* v. *Wilkes, supra; Turner* v. *McIlhaney*, 8 Cal., 575; *Tul* v. *Byrne*, 24 N. J., 631; *Drake* v. *Eakin*, 10 Cal., 312; Wharton Ev., §§ 488, 489. We think, therefore, that neither the defendant's second assignment of error, nor his exception to the refusal to give his instructions numbered 8 and 9, can be sustained.

The Judge unquestionably stated the law correctly when he told the jury that the notorious insolvency of Hinson, if admitted, as set forth in the prayer of defendant, would be a circumstance tending to show that the defendant was a participant in the fraud, and we concur in the propriety of modifying the original proposition drawn by defendant, as it was qualified by the addition made by the Court.

The declared object in enacting 13 Eliz. was to avoid and abolish "feigned gifts, grants, alienations, &c., which may be contrived and devised of fraud, to the purpose and intent to delay, hinder and defraud creditors and others of their just and lawful actions and debts." So that, if Hinson had conveyed to Green in order to evade the payment of any judgment that might be recovered in an action for slander then pending against him, the deed must be treated as

fraudulent in so far as it affected the rights of creditors, such as the plaintiff in the execution under which G. W. Helms bought.   2 Blk., 436; 2 Atkins' Reports, 481.

The defendant asked the Court to instruct the jury that, "even though the purchase money agreed to be paid may have been less than the actual value of the land, this can raise no presumption against the defendant, for it is in proof that the land was involved in litigation, and this fact may well explain the inadequacy of price."

In lieu of this, the Judge charged them: "That if the jury believe that W. B. Hinson, being much involved in debt, conveyed to his son-in-law, J. L. Green, the land in dispute at much less than its value, and the said son-in-law was himself insolvent at that time, and secured the purchase-money by executing his individual note, which has not been paid, and without any further security, then the law presumes the said deed to be fraudulent, and it is incumbent upon the defendant to rebut said presumption, for the law looks with suspicion upon such transactions between near relatives."

The rule laid down by Justice Boyden in *Reiger* v. *Davis*, 67 N. C., 189, was, that when a debtor, much embarrassed, conveys property of much value to a near relative, and the transaction is secret and no one is present to witness the trade but these near relatives, it is to be regarded as fraudulent; but when these relatives are made witnesses in the cause, and depose to the fairness and *bona fides* of the transaction, and that, in fact, there was no purpose of secrecy, it then becomes a question for the jury to determine the intent which influenced the parties, and to find it fraudulent, or otherwise, as the evidence may satisfy them.

In *Brown* v. *Mitchell*, 102 N. C., 372, it is said that, in *Reiger* v. *Davis*, *supra*, the Court intended only to lay down a rule of evidence applicable in all cases, whether an issue of fraud is involved or not, that "where effective proofs are in the power of a party who refuses or neglects to produce

them, that naturally raises a presumption that those proofs, if produced, would make against him."

The language used by Justice BOYDEN is not correctly reproduced in the syllabus that seems to have led to an incorrect inference in *Tredwell* v. *Graham*, 88 N. C., 208. But in any view of the case, it is only after the relatives, who were present, make some explanation which, if believed, inspires confidence in their good faith and shows that they had no reason or purpose to conceal any of the circumstances attending the transaction or the motives leading to it, that the presumption is rebutted and the inadquacy of consideration and the failure to summon others to witness what occurred in the family dwindles in importance from the basis of presumption to mere badges of fraud. Green, when forced as an unwilling witness to testify, did not repel the presumption of a fraudulent intent by showing that there was no purpose to conceal the fact that the conveyance had been made, and that in fact there was no intention, so far as he knew, on the part of Hinson, to defraud creditors. The explanation made by him is couched in very well guarded language. He testified, on cross-examination, that there was "no understanding between him and Hinson that he was to take the deed to the land in dispute for the purpose of keeping off Hinson's creditors," and he did not say that the price was equal to the real value of the land, but was as much as it was worth, with the cloud of litigation as to the title hanging over it. He assigned no reason for postponing the registration of the deed, nor did he state that it was the positive purpose of his father-in-law to exact, and of himself to pay, the consideration evidenced by the note. He does not state why it was that the recited consideration was $300, while the real price was $200. In order to repel the presumption of fraud, the explanation, when attempted, should have been so full that, if believed, it would have relieved the transaction of all suspicion and established the good faith of the parties to it. The fact that it is exclu-

sively within. the power of persons, so nearly related as the defendant and his father-in-law Hinson, to explain every suspicious circumstance, if they did act in good faith, and the neglect to do so voluntarily, or the failure of one of the parties, when he was forced to go upon the stand, to throw light upon it, so as to fully establish, if their explanations were credited, the *bona fides* of the transaction, is to be considered as due to inability to show that their conduct was consistent with an honest purpose. The presumption arises rather from the peculiar knowledge, on the part of parties to a deed, of facts that would either confirm or remove suspicion raised by circumstances in evidence as to the embarrassment of the grantor and his relationship to the grantee and the failure to state or prove what they know, than from any positive testimony as to the persons actually present at the transaction    Badges of fraud are suspicious circumstances that overhang a transaction (such as those we have already mentioned in this case), and where the parties to it withhold testimony that it is exclusively within their power to produce, and that would remove all uncertainty, if believed, as to its character, the law puts the interpretation upon such conduct most unfavorable to the suppressing party, as it does in all cases where a party purposely or negligently fails to furnish evidence under his control and not accessible to his adversary. Wharton on Ev., §§ 1266 to 1269. This is consistent with the rules as to the *quantum* and quantity of proof requisite upon issues of fraud heretofore laid down by this Court. *Brown* v. *Mitchell, supra; Harding* v. *Long,* 103 N. C., 1; *Berry* v. *Hall,* at this term.

The defendant cannot demand that this Court, under a general exception to the charge, should follow him in a search for error in every part of it. We can go no further than to review the portion of the charge substituted for the special instruction asked. *McKinnon* v. *Morrison,* 104 N. C., 354.

There is no error.                                          Affirmed.