The evidence offered at the trial by the plaintiff, the defendants offering no evidence, disclosed the following facts: G. W. Hobbs, the *Page 178 
grandfather of plaintiffs, was, prior to 8 May, 1893, the owner in fee and in possession of several tracts of land in Sampson County; on that day he made a distribution of his lands among his seven children, conveying to them, by separate deeds, certain described tracts of land. The recited consideration in each was $1 and love and affection. He reserved for his wife, Mary, a life estate in all, and for himself a life estate certainly in one hereinafter mentioned, and perhaps in others. All the deeds were not set out. G. W. Hobbs retained no land, other than his life estate mentioned.
(184) The particular deed under which the plaintiffs seek to recover in this action contained the following recitals, premises and habendums: "That whereas said parties of the first part (G. W. Hobbs and wife, Mary Hobbs) are desirous of making provision for said party of the second part (E. W. Hobbs) by reason of their natural love and affection for him, their son: Now, therefore, in consideration of the premises and the further consideration of $1 to them in hand paid, etc., the said parties of the first part do hereby convey to the said party of the second part the following bounded and described tract of land, viz.: (then follows the description) containing 284 acres, more or less, subject to and depending upon the following conditions, qualifications and limitations, viz.: That, first and foremost, the said parties of the first part reserve to and for themselves a life estate in the lands herein described, that is, that this conveyance shall in no way operate to convey possession or right of possession until the death of both the said G. W. Hobbs and wife, Mary Hobbs; and the said parties of the first part have given, granted and conveyed, and by these presents do give, grant and convey unto the said party of the second part, an estate for the term of his natural life in said lands and no longer or further, which is to take effect and operate after the death of both the said G. W. Hobbs and wife, Mary Hobbs, and not until then. And the said parties of the first part do hereby give, grant and convey the remaining estate in said land in fee simple, absolutely and forever, to such of the lawfully begotten issue of the said party of the second part as may be living at the time of his death, to their heirs and assigns forever, to be equally divided between said issue; the same to take effect and operate when the particular estate for life, of the said party of the second part, shall have determined by his death. But should parties of the first part, or either of them, survive the said party of the second part, then upon the death of such party or parties of the first part, by virtue of this conveyance, a fee-simple estate in said land shall vest in such lawfully begotten issue of the party of the second part as may then be living and their heirs and assigns, the same to be equally divided between said issue; which estate the said parties *Page 179 
of the first part do hereby grant and convey to such lawfully begotten issue, their heirs and assigns: to have and to hold unto the said party of the second part such an interest in the aforesaid tract of land as hath been hereby conveyed, and to the lawfully begotten issue of the said party of the second part, as above specified, their heirs and assigns." This deed was duly acknowledged, probated and registered on 9 May, 1893. The plaintiffs are surviving children of E. W. (185) Hobbs and the above deed covers the land in suit. The plaintiffs offered the following court records: Judgment, A. M. Lee against T. M. Ferrell, J. A. Ferrell and G. W. Hobbs, docketed 14 February, 1894, for $926.97, 8 per cent interest from 6 February, 1894, and costs, $6.30 The complaint in the action in which the above judgment was recovered, stating as its cause of action the nonpayment of a note under seal, dated 14 September, 1887, for $778.91. The summons in this action was issued 21 December, 1893. The judgment was rendered by and docketed in the Superior Court of Sampson County. Summons dated 9 April, 1901, in action entitled, "A. M. Lee, for himself and all other creditors of G. W. Hobbs, deceased, who will join in, etc., against W. A. Hobbs, administrator of G. W. Hobbs, W. A. Hobbs and others (giving names), heirs at law of G. W. Hobbs and Mary Hobbs, widow. Some of the defendants accepted service, and service was made upon others by a proper officer. The complaint in that action, duly verified, which, among other things, set forth the judgment in favor of A. M. Lee; the lien of the judgment on the lands; that the judgment was unsatisfied, except that W. A. Hobbs paid $136.23, 14 July, 1899, and the sum of $213 was paid 5 February, 1900; that W. A. Hobbs the days mentioned, conveyed to the defendants in that action, his heirs at law, by deeds of gift, the following described tracts of land (the follows a reference to the recorded deeds to the several defendants and the statement of the acreage in each deed); that at the time said deeds of gift were executed, the grantor was indebted to the plaintiff Lee, and the debt reduced to judgment as aforesaid; the names of the heirs at law are given, and the prayer for sale of the land described for the payment of the debt. It seems that no answer was filed to this complaint.
An order of sale was entered by the court at September Term, 1901, reciting the material allegations of the complaint, and John D. Kerr was appointed commissioner to sell the lands described in the complaint, and he was directed to "sell said lands in separate tracts, *Page 180 
according to said deeds to said defendants, heirs of G. W. Hobbs, and to pay off the share of each of said heirs in said judgment debt, out of the proceeds of said sale of the part of said land so deeded to each defendant." Thirty days was allowed for the payment of the (186) said judgment debt, and if not then paid, the commissioner was ordered to advertise and sell the land at the courthouse door in said county of Sampson. The debt not being paid, the commissioner advertised the land for sale by separate tracts, and sold the same on Monday, 16 December, 1901. The advertisement of the sale by the commissioner was offered in evidence. For the land included in this action, Emma J. Hobbs, the mother of plaintiffs and wife of E. W. Hobbs, became the highest bidder, at $1,250. The sale was duly reported by the commissioner and confirmed by the court at May Term, 1902, and commissioner directed to make deeds to the purchaser, the report of commissioner and order of confirmation being offered in evidence.
The commissioner, by direction of Emma J. Hobbs and her husband, executed two deeds for the land purchased by her — one to A. C. Vann, 9 June, 1902, for 66 3/4 acres, which is not embraced in the present action, and the other to the defendant George W. Cashwell, for the remainder of the tract, both deeds being offered in evidence.
There was evidence that Mrs. Mary Hobbs, the widow of G. W. Hobbs, was dead, and that E. W. Hobbs died in 1907, leaving surviving the plaintiffs as "his lawfully begotten issue."
The defendant Cashwell admitted his possession under his deed. In his answer filed, the defendant denied that plaintiffs were the owners of the lands, they claiming in their complaint under the deed from G. W. Hobbs and wife; asserted title in himself under the creditors' action hereinbefore recited, and that G. W. Hobbs was indebted to A. M. Lee; that the deed of G. W. Hobbs, under which plaintiffs claimed, was a deed of gift; that the land was condemned to be sold to pay said debt and that he is a purchaser thereof; that he mortgaged the same to his codefendant, B. F. Powell.
The plaintiffs alleged in their complaint that they were the owners of the land described, and entitled to possession; that they claim under deed of G. W. Hobbs and wife to E. W. Hobbs, which is referred to and made a part of the complaint; that they are the children of E. W. Hobbs; "that on 9 April, 1901, A. M. Lee and other creditors brought a suit in the nature of a creditors' bill, against W. A. Hobbs, administrator of G. W. Hobbs, and E. W. Hobbs and other heirs at law of G. W. Hobbs, to subject, among other lands, the above described land to the payment of the debts of G. W. Hobbs; that in said action these plaintiffs were not made parties plaintiff or defendants; that in said *Page 181 
suit one J. D. Kerr was appointed commissioner to sell, among other lands, the lands above described and claimed by these plaintiffs; that he did pretend to sell the above-described lands to defendant, (187) George W. Cashwell"; that all the debts of G. W. Hobbs were paid without resort to land held by defendant Cashwell; that the sale to him was unnecessary and void, and the deed to him did not divest the title of plaintiffs.
Upon the pleadings, his Honor submitted one issue, to wit: Are the plaintiffs the owners and entitled to the immediate possession of the lands described in article 1 of the complaint?
The defendants, at the close of the evidence, moved for judgment of nonsuit, and, this being refused, moved for a peremptory instruction to the jury to answer the issue "No." This was declined. His Honor thereupon instructed the jury, if the believed the evidence, they should answer the issue "Yes," which was accordingly done. The defendants excepted to these several rulings of his Honor, and from the judgment appealed to this Court.
The plaintiffs rest their contention upon the theory that as they were seized of an estate in fee in the locus in quo, under the deed of G. W. Hobbs, and being in esse, were parties neither by service nor appearance to the action by the creditors of G. W. Hobbs, in which the land was sold and through which defendant claims title, the judgment and the proceedings were, as to them, void and wholly insufficient to divest their estate. In support of this contention and the correctness of his Honor's ruling in their favor, the plaintiffs rely upon the decisions of this Court inYarborough v. Moore, 151 N.C. 116; Moore v. Lumber Co., 150 N.C. 261; Cardv. Finch, 142 N.C. 140; Carraway v. Lassiter, 139 N.C. 145; Harrison v.Hargrove, 120 N.C. 96, and the cases cited and approved in them. The principles determined by these cases are too well established to admit of doubt, and yet, conceding to them, as far as they may be applicable to the present case, their fullest influence, we do not think they are decisive of the questions presented by this appeal.
In our opinion, this case is controlled by sections 960 (13 Eliz.) and 962, Rev. 1905. The plaintiffs' title is derived immediately through a deed of gift from their grandfather. The evidence offered by them disclosed that the donor was indebted at that time, and at the same time he disposed of his entire landed estate by deeds of gift to his children; and it tended to show that he left no personal estate; that *Page 182 
his indebtedness could be satisfied only by resort to his lands (188) held under the deeds of gift. Section 962, Rev., declares that no voluntary gift, by one indebted, shall be deemed void as to creditors, by reason merely of such indebtedness, "if property, at the time of making such gift or settlement, fully sufficient and available for the satisfaction of his then creditors, be retained by such donor or settler; but the indebtedness of the donor or settler at such time shall be held and taken as well with respect to creditors prior as creditors subsequent to such gift or settlement, to be evidence only from which an intent to delay, hinder or defraud creditors may be inferred; and in any trial shall, as such, be submitted by the court to the jury, with such observations as may be right and proper. " In McCanless v.Flinchum, 89 N.C. 373, it is said: "A voluntary deed of land or other property made to a son by a father unable to pay his debts, is void per se, as to creditors; indeed, such a deed to any person is void, and such a deed appearing, the court declares it void in law. It is well-settled law in this State, that no voluntary deed can be upheld as against creditors, when the bargainor is unable to pay his debts at the time of the execution of the deed. " Wothey v. Brady, 91 N.C. 265. It is not required to go to the full length of the above decisions to be convinced of the error in his Honor's rulings. In Warren v.Makely, 85 N.C. 12, this Court, speaking through Smith, C. J., said: "The existence of the debt reduced to judgment before the making of the deed of gift and subsequent insolvency of the donor, renders her deed prima facie fraudulent and void against the creditors seeking to subject the land to the payment of his debt, and equally so against the defendant purchasing under the execution issued to enforce it, unless, at the time, the debtor retained property, in the words of the act,`fully sufficient and available' for the satisfaction of her creditors; and theduty of proving this fact to sustain the conveyance developed upon theplaintiff. In Creedle v. Carrawan, 64 N.C. 422, this Court, in referring to a voluntary deed, said: "If its validity depends upon these considerations alone (love and affection and $5), it is a voluntary conveyance, and fraudulent as to debts existing at the time of its execution, unless the defendant can show in evidence such a state of facts as will bring it within the exception mentioned in the statute, Rev. Code, ch. 50, sec. 3 (now sec. 962, Rev.). Where the rights of creditors are affected, a voluntary conveyance is presumed in law to be fraudulent, and to rebut the presumption, it is incumbent on the party claiming under such deed to show that it was executed under such circumstances as will meet the requirements of said statute." In (189) Black v. Sanders, 46 N.C. 67, Pearson, J., thus speaks for the Court: "Apart from the act of 1840, if there be an existing *Page 183 
debt and the debtor makes a voluntary conveyance, and afterwards becomes insolvent, so that the creditor must lose his money or the donee must give up the property, the latter is required to give way, on the ground that one must be honest before he is permitted to be generous. To effect this, such voluntary conveyance is presumed, as a matter of law, to be fraudulent.Jones v. Young, 20 N.C. 353; Houston v. Bogle, 32 N.C. 496. The act of 1840 makes an important change in the law and requires the question of fraud to be submitted to the jury as an open question of fact, in those cases where, at the time of conveyance, property fully sufficient and available for the satisfaction of all his then creditors is retained by the donor. This is made a condition precedent, in order to bring a case within the operation of the act. " While in the case of Cox v. Wall, 132 N.C. 732, sec. 961, 27 Eliz., was the particular statute considered by the Court, much of its reasoning is applicable to the section now under consideration. In that case this Court said inter alia.: "It would appear from these cases that whatever must exist in order to protect the title, must be averred and proved by him who holds that title. The burden is with him. " It would seem obvious, therefore, from these authorities, that the burden was upon the plaintiffs, claiming only as voluntary donees under a deed of gift against the defendant claiming through a creditor of their donor, existing at the date of the deed of gift, to show the existence of those facts required by the statute to make their title good. Clement v. Cozart, 112 N.C. 412;Arnett v. Wanett, 28 N.C. 41.
The next question presented for consideration is the effect to be given to the creditors' action instituted against the administrator and the heirs at law of the deceased debtor. As the plaintiffs were not parties to that action, the proceedings are ineffectual as an adjudication to divest their title, and do not, as to them, constitute an estoppel. Finchv. Card, supra, and authorities cited above. The plaintiffs, by the present action, have their "day in court" and an opportunity to establish the validity of their title. If the sale had been made under an execution issued in the lifetime of the judgment debtor, then the purchaser at that sale and the plaintiffs, as voluntary donees, could have settled their title in an action brought by either against the other; they could have had "a fair fight" and the "question be put on its own merits," to quote the apt words of Pearson, C. J., in Paschal v. Harris, 74 N.C. 335. But the death of the judgment debtor prevented this somewhat summary method, and the creditor must obtain the satisfaction of his debt through the administrator or executor. Sawyers v. (190)Sawyers, 93 N.C. 321; Truck v. Walker, 106 N.C. 285; Webb v.Atkinson, 124 N.C. 447; Holden v. Strickland, 116 N.C. 185. And where the administrator fails to perform this duty — to subject the real *Page 184 
estate of his intestate to the payment of his debts — the creditors may compel him to do so. Tuck v. Walker, supra; Baker v. Carter,127 N.C. 92; Harrington v. Hatton, 129 N.C. 146.
The complaint filed by the judgment creditor in his action seems to contain all the averments necessary to invoke the aid of the court in the enforcement of his right to have the lands of his judgment debtor subjected to the payment of his debt. In Tuck v. Walker, supra, this Court said: "When it becomes necessary to sell the real estate of a decedent to make assets, the Code, 1446 (now Rev. 1905, sec. 72) provides in explicit terms that the court may decree a sale of `all real estate that deceased may have conveyed with intent to defraud his creditors, and all rights of entry, rights of action, and all other rights and interests in land, tenements or hereditaments, which he might devise, or by law would descend to him,' and the language has been so construed by this Court. Mannix v. Ihrie70 N.C. 299; Heck v. Williams, 79 N.C. 437." Section 73, Rev., provides that no order to sell the real estate shall be granted till the heirs or devisees of the decedent have been made parties. The heirs at law of the decedent were made parties to the action, as shown by the records offered in evidence in this case.
While we have reached the conclusion that the voluntary donees were not necessary parties to the proceeding to subject the lands to payment of the debts of the decedent, we think they were proper parties, and that it would be more consistent with the chief purpose of judicial sales to have had them before the court before the order of sale is made, in order that when the property is sold an undisputed title may be offered and the highest possible price may be obtained for the property. This accords with the trend of modern legislation and judicial opinion. Crockett v. Bray,151 N.C. 615.
As the plaintiffs were not made parties to the creditors' action presented in this case, the judgment was not in any way conclusive upon them or an adjudication upon the validity of their title. Its whole force and effect was to divest whatever title the judgment debtor had in the land, and to place the donees claiming under the voluntary deed from the common source of title, and the defendant — a purchaser at the sale had under order of the court — in the same relative (191) positions that the plaintiffs would have occupied to the purchaser at a sale under execution, having the right to use the same range of defenses to protect their title derived from the donor. If their title can be established under the law, then the title in the purchaser under the creditors' action will be worthless and his deed will be ordered to be canceled on the record. *Page 185 
The position of the plaintiffs is admittedly that of donees holding under a voluntary conveyance from a donor indebted at the time, and their deed will be valid if property was retained by their donor fully sufficient and available for the satisfaction of his then creditors, the defendants having denied plaintiffs' title to the land. "At an early period in the judicial history of this State," says Avery, J., in Helms v. Green,105 N.C. 251, "it was held that courts of law might hear evidence and allow a jury to pass even incidentally, upon the question whether a deed was void for fraud in the factum or under 13 or 27 Eliz. (The Code, secs. 1545 and 1546), Logan v. Simmons, 18 N.C. 16. Hence, in the trial of actions of ejectment, where the question arose whether a deed, relied upon by either of the parties as a part of a chain of title, was executed to hinder delay or defraud creditors, evidence was heard to attack or sustain such conveyances, though the action was not brought to directly impeach its character. Lee v. Flanagan, 29 N.C. 471; Hardy v. Skinner, 31 N.C. 191;Hardy v. Simpson, 35 N.C. 132; Black v. Caldwell, 49 N.C. 150; Winchesterv. Reed, 53 N.C. 377; Wharton on Evidence, sec. 931."
We think, therefore, that his Honor erred in his rulings, and the questions arising upon the evidence affecting the validity of plaintiffs' title ought to have been submitted to the jury, "with such observations as may be right and proper. " There must be a
New trial.
Cited: Aman v. Walker, 165 N.C. 228; Shuford v. Cook, 169 N.C. 55.
(192)