Gaston, J.
The court concurs in the opinion,- declared in the Superior Court,.that the deed, under which the plaintiff sets up title, is not upon its face fraudulent. It purports to be a conveyance from Thomas Dwight to the plain *496 tiff, to the intent that unless payment be made of certain en-l,meratet^ debts of the said Dwight, within forty days after the execution thereof, the whole of the property shall be gold & the proceeds applied to the satifaction of said debts, & that if the said Dwight shall, within the forty days, pay off the said debts, the plaintiff shall re-convey the property to him. Assuming these debts to be bona fide, there seems nothing in this arrangement, inconsistent with a fair appropriation of the property to the security of creditors. Where the interval, between the date of such an instrument and the day appointed therein for the sale of the property conveyed, appears unreasonably long, this circumstance may properly be insisted on as indicative of an intent to shield the. property for a time for the use of the debtor, and to that extent as having been mad,e for his case or favor; and if that intent, under all the circumstances of the case, be found, then indeed it follows as a consequence in law that the conveyance is fraudulent. There may be an interval, so manifestly unnecessary for any holiest purpose, as to justify the court in so pronouncing — but in our judgment that allowed in this deed could at most be but submitted to the jury asa circumstance, from which, in connection with all the parts of the case, they were to infer the actual intent of the parties.
Nor do we see any error in the general instruction or charge of his Honor, that if the deed was given Iona fide to secure the debts named, the plaintiff would be entitled to a verdict, notwithstanding the other creditors of the plaintiff should, by reason of said deed, be defeated, delayed of hindered in the collection of their debts. Every conveyance of property by an insolvent or embarrassed man, to the exclusive satisfaction of the claims of some of his creditors, has necessarily a tendency to defeat or binder his other creditors in the collection of their demands. But if the sole purpose of such a conveyance be the discharge of an honest debt, it does not fall under the operation of the statute against fraudulent conveyances. It is not embraced within its words, which apply only to s' ■; are “contrived of malice, fraud, collusion or covin, to the end, purpose, and intent to delay, hinder and defraud creditors.” So long as a delator remains *497 in contemplation of law the absolute owner of property, it cannot be.said of an appropriation of that property exclusively to the purpose of paying a debt, that it is a contrivance “of malice, fraud, covin or collusion to the end, purpose and intent to delay, hinder and defraud other creditors.” He has exerted a power over property, which the law gives to him as owner — and has exerted it for a purpose, which is not in law wrongful. This construction of the enacting part of the statute is fortified by the provision contained in it that the statute “shall not extend to or be construed to impeach, defeat or make void any conveyance or assurance bona fide made up on and for good consideration to any person not having notice ot such fraud.” Rev. St. ch. 50, sect. 1st and 3rd. It is perfectly settled in England, except in cases affected by the bankrupt system, and with us (who have no bankrupt system) in all cases, that a debtor, whatever be the extent of his embarrassments, may devote any part or the whole of his property to the payment of certain creditors in preference of others, & that no one has a right to enquire whether the objects of this preference are more meritorious than those left to suffer. Moore vs. Collins, 3 Dev. 126. But it is equally clear that if it be a part of the purpose of a conveyance or assurance for the security or satisfaction of creditors, that it shall avail or be used for the ease or favor of the debtor, such a conveyance or assurance does fall under the enactments of the statute, because, to the extent of that purpose, it is a contrivance of malice and covin, to the intent to hinder other creditors in the collection of their justdemands. Leadman vs. Harris, 3 Dev. 144. Kissam vs. Edmundson, 1 Iredell’s Eq. Rts. 180. The cases in which this doctrine has been heretofore adjudged are those in which there was an intent, open or covert, that the debtor should retain for a definite or indefinite time the beneficial enjoyment of the property — or should receive a portion of the profits or proceeds thereof — or should retain a control over the property conveyed so as to enable him to make preferences thereafter — or whereby the trustee or debtor might be enabled to coerce creditors into a submission to terms inconsistent with their legal rights. None of these are in point with the case now *498 before us, but from them we think a principle is to be extrae-' tec*! ^ *s our duty to cause to be faithfully applied to the case before us. That principle is this: that the whole purpose of the parties to such conveyance must be the devotion of the property bona fide to the satisfaction of the preferred creditors, and no part of that purpose the hindering or delaying of creditors, except so far as such hindrance or delay is the unavoidable consequence of the preference so given. Every contrivance to the intent to hinder creditors. — • directed to that end — is “malicious” that is to say, wicked. Where such hindrance is but an incidental consequence of an act not directed to that end, and bona fide done with another and rightful intent, it may be regretted as an unfortunate result, but cannot be held to impart to the act a wicked or malicious intent. But if the hindrance of creditors form any part of the actual intent oí the act done, so far the act is as against them a wicked or malicious contrivance — • and it is not to be questioned that a conveyance or assurance, tainted in part with a malicious or fraudulent intent, is by the statute made void as against creditors in tolo.
The testimony given upon the trial was such as to warrant the defendants in praying the specific instructions, for which they asked, if in law such instructions were correct. There certainly was evidence tending to shew that it was a condition of this deed, as understood between the parties thereto, that it should not be registered nor put in use but kept a secret from the world, until after the 20th of February ensuing the date, that is to say. the day before which a sale was to be forborne, unless such registrationbecamenecessary in order to hinder the creditors of the debtor from obtaining satisfaction out of the property. There was also evidence tending to show that it was a further part of the agreement between the -parties, that the transaction should be kept secret, at all events until the debtor should escape beyond the reach of the process of his creditors. For the purpose, therefore, of testing the legality of the special, instructions asked we will suppose that this agreement appeared in extenso up *499 on the face of the instrument, as a condition thereof, and en-quire, whether so appearing, it would not manifest that the instrument was contrived of malice, to the intent to hinder and delay creditors of their just and lawful actions and debts? It seems to us that the answer to this question must be in the affirmative. The instrument, excluding the condition, would purport to be an absolute conveyance of the property by Dwight for the satisfaction of his creditors — while the condition would shew, that, in truth and according to the understanding of the parties, it was to remain his property until the 20th of February, unless his creditors should attempt to regard it as such — and then the conveyance was to be put in use in order to repel these attempts. The defeating of these creditors is the purpose, which is to call theconveyance into activity. — the direct intent of the conveyance is to shield the debtor’s property from the creditors, and the conveyance itself is a contrivance, whereby to carry this intent into execution and to accomplish this purpose. But moreover, in the case supposed, a part of the price of the deed is the secrecy of the plaintiff, in regard to the debtor’s scheme of running away. We need not, and cannot, lay down as a rule of law, that those, who take securities from a debtor about to abscond, must apprise creditors of his intention to place himself beyond their reach, under penalty of forfeiting such securities — but we feel ourselves justified in holding that when secrecy is part of the consideration of such securities — the securities are contaminated thereby, and ought not to be regarded as given bona fide.
This view is, we think, corroborated bymany obvious and very important considerations of public policy. Among the most severe trials, to which the honesty of man can be subjected, is that of inability, with all his means, to meet all his debts. He is assailed by temptations of interest, of shame, of affection to wander from the straight line of duty, and he is entrusted by the law with a dominion over what is in justice the property of his creditors, which, if they are permitted to become bidders for his favor, converts them also into tempters to dishonesty. It is enough, perhaps more than enough, for human infirmity, that the debtor shall be allowed, under *500 these distressing circumstances, to select according to his tm~ bribed judgment among his creditors for those who merit a preference, and to make asimple and unconditional appropriation 0f his property to the payment of their claims. But to allow him to negotiate for terms with them — to seek out those, who will be most favorable to him, either in the way of profit or commerce, direct orindirect — to stipulate openly or covertly with regard to the property conveyed other than its appropriation to the purposes of the conveyance — would be injurious, to the best interests of the community.
Much has been done to obviate the mischiefs, occasioned by these assignments of insolvent men, by the ■act of Assembly, which denies to them efficacy, as against creditors, but from the time of registration. This act isa legislative declaration, that secrecy with respect to such instruments is against public policy. The courts of justice ought to act in furtherance of this policy. They should regard all devices and shifts, intended of purpose to surprise creditors by secret conveyances in trust, although they do not-fall within the letter of the statute, and, therefore, are not avoided thereby, as contrivances denounced by the law.
The time has come when, if possible, some plain rule should be laid down, in regard to these conveyances, “ so simple that honest debtors cannot mistake it, and fraudulent ones will be deterred from its violation by the certainty of defeat,” (per Southerland, Justice, Enover vs. Wakeman 11 Wen. 203,) and that rule is this, that the debtor may thereby make an appropriation of his property to the payment of particular creditors — but there must be no condition, direct or indirect, controlling this application. All over and above what is necessary for the devotion of the property to the payment of the debts “cometh of evil.”
The judgment is reversed and a new trial awarded.
Per Curiam, New trial awarded.