WURLITZER DISTRIBUTING CORPORATION v. JOHN C. SCHOFIELD AND
    WIFE, VICTORIA R. SCHOFIELD, JOHN S. SCHOFIELD AND WIFE,
    CHARLOTTE M. SCHOFIELD

No. 7922SC12

(Filed 15 January 1980)

1. **Fraudulent Conveyances § 3.4— consideration —pre-existing debt—insufficiency of evidence**

    In an action to have set aside as fraudulent deeds from defendant son and his wife to defendant father and mother, evidence was sufficient to support the trial court's finding that the conveyances were voluntary, that is, without consideration, and that there was no valid, existing debt which was paid by the transfers of property, where such evidence tended to show that no money passed from father to son at the time of the conveyances; the father could not recall how much money, if any, his son owed him at the time of the transfers; the first time the father ever attempted to determine the amount owed him by his son was in response to interrogatories served upon him by plaintiff; the son never signed a promissory note to reflect the monies owed to his father; the son's wife never owed the father any amount; the father never demanded any payment of the amount allegedly owed from his son; and no writing reflecting a $15,000 loan from father to son was ever produced at trial, though the father stated in his deposition that he had found such a writing.

2. **Fraudulent Conveyances § 3.4— grantee's assumption of liens—grantee's inability to pay—insufficient consideration**

    In an action to have set aside as fraudulent deeds from defendant son and his wife to defendant father and mother, evidence was sufficient to support the trial court's finding that the conveyances were not supported by consideration, though the son argued that the father assumed the liens upon the property when it was conveyed to him, and the assumption of a mortgage by a grantee generally constitutes consideration for the conveyance of property from an insolvent grantor, since the evidence tended to show that the father was unable to pay the debts assumed and that the son was in fact the one actually making payments on the property in question.

3. **Fraudulent Conveyances § 3.4— fraudulent intent—sufficiency of evidence**

    In an action to have set aside as fraudulent deeds from defendant son and wife to defendant father and mother, evidence was sufficient to support the trial court's finding that the transfers were made with fraudulent intent where such evidence tended to show that the transfers were made at a time when the son owed plaintiff a $60,000 debt; the transfers were made while a suit by plaintiff to recover the debt was pending; the son continued to live in the home on one of the pieces of property after its transfer to the father; the son was unable to show that he retained property sufficient to pay the debt to plaintiff on which he certainly knew he was potentially liable; and the father concurred in the son's fraudulent intent in that he knew of his son's financial difficulties.

4. **Fraudulent Conveyances § 3.4— consideration—retention of other property to pay debts—no fraudulent conveyance**

In an action to have set aside as fraudulent a deed from defendant son and his wife to defendant father and mother, evidence was sufficient to support the trial court's conclusion that there was sufficient consideration to support the transfer and that defendant son and his wife did not divest themselves of all their property at that time where such evidence tended to show that the father and son were jointly obligated on a note secured by the property in question; the son had made some of the mortgage payments out of the rental proceeds from the property; during a period in 1974 six checks written by the son in payment of that obligation were returned for lack of sufficient funds; the mortgagee notified the father that the property would be foreclosed unless full payment of the amount in arrears was made immediately; the father paid the amount in arrears; thereafter the property was transferred to the father and mother in December 1974; the father made all payments thereafter; at the time of the transfer defendant son and his wife owned other property sufficient to pay other debts; and there was no evidence that, as of the date of the transfer, a default had occurred with respect to defendants' obligation to plaintiff.

APPEAL by both plaintiff and defendants from *Hairston, Judge.* Judgment entered 31 August 1978 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 18 September 1979.

Plaintiff seeks to set aside as fraudulent three real estate transfers by the defendants, John C. Schofield and his wife Victoria R. Schofield, to John S. Schofield and his wife Charlotte M. Schofield, the parents of defendant John C. Schofield. The transfers which are the subject of this appeal are as follows: (1) a transfer dated 10 December 1974 and recorded 15 May 1975 conveying an one-half undivided interest in certain property situate in Rowan County, North Carolina; (2) a transfer dated and recorded 6 April 1976 conveying a house and lot located in Davidson County, North Carolina; and (3) a second transfer dated and recorded 6 April 1976 conveying an one-half undivided interest in other property situate in Rowan County.

On 24 January 1975, plaintiff Wurlitzer filed an action against defendants John C. Schofield and Victoria R. Schofield in Superior Court of Davidson County seeking to recover amounts allegedly due Wurlitzer under a guaranty agreement executed by these defendants on 17 August 1973. Wurlitzer utlimately obtained a judgment for $60,398.28 against defendants on 1 September 1976. Prior to Wurlitzer's obtaining judgment, the action was originally

scheduled for trial the week of 5 April 1976, but was continued by order of court. On 6 April 1976, defendants John C. Schofield and Victoria R. Schofield made two of the transfers complained of in this action. Defendant John C. Schofield was adjudicated a bankrupt on 21 December 1976, as the result of his voluntary petition.

The present action was instituted by Wurlitzer on 16 April 1976, with the two transfers made on 6 April 1976 as the subject of the suit. Wurlitzer subsequently amended its complaint on 8 October 1976 to include the transfer made on 10 December 1974. Wurlitzer prosecuted its action on the following grounds: that the conveyances were voluntary (without adequate consideration) and executed with the purpose and intent to defraud plaintiff and evade payment of any judgment that might have been entered against defendants; that the transfers were made at a time when defendants were unable to pay their debts; and that defendants did not retain sufficient assets to pay their debts then existing. All of the defendants asserted by way of defense that the transfers were for valuable consideration and that the applicable statute of limitations barred any recovery by plaintiffs. Victoria R. Schofield asserted a lack of knowledge of the transactions herein, and that she signed the deeds at the direction of her husband without such knowledge.

At trial, Wurlitzer offered as evidence certain stipulations, admissions in the pleadings, and the deposition of John S. Schofield. Defendants offered testimony of John S. Schofield. After considering the evidence presented and the arguments of counsel, the trial court, sitting as a jury, made findings of fact, which, in pertinent part, provided:

"7. At the time of the two transfers [on 6 April 1976] described above, Wurlitzer's debt was in existence and was unpaid, and said debt remains unpaid at the present time. The above two conveyances were voluntary, that is, without consideration, and the grantors did not retain property fully sufficient and available to pay their debts then existing. The defendant John C. Schofield was voluntarily adjudicated a bankrupt on December 21, 1976, and Carl Gray was duly appointed and is presently serving as Trustee in Bankruptcy. As early as December, 1974, the defendant John C. Schofield

was having financial difficulties in that his father had to cover six worthless checks which he wrote to Rowan Savings and Loan in repayment of a loan on the property described below. Although the defendants alleged considerable debt owed to John C. Schofield's father, John S. Schofield, the Court finds that there was no valid, subsisting debt which was paid by these two transfers of property occurring on April 6, 1976. Furthermore, they were made at a time when there was a large debt outstanding to Wurlitzer, a pending lawsuit with Wurlitzer, a trial scheduled the very week the two deeds were executed, a close relationship between the parties to the transaction, namely father and son, retention of actual possession of the Lakewood Hills property by the son, John C. Schofield, no taxable consideration shown on the face of the deeds, no debt owed by the defendant Victoria R. Schofield to John S. Schofield, and notice on the part of John S. Schofield of John C. Schofield's intent to protect his property from his creditors. Therefore, the Court finds that, not only were the transfers without consideration, but they were made with the actual intent to hinder, delay, and defraud creditors on the part of the grantors, John C. Schofield and Victoria R. Schofield, which intent was participated in by the grantees, John S. Schofield and Charlotte M. Schofield.

. . .

9. With respect to the December 10, 1974 transfer, the Court finds that there was considerable consideration for this transfer in that the defendant John S. Schofield paid six bad checks which John C. Schofield had written to the Rowan Savings and Loan in the amount of $157.73 each, thereby assisting his son to avoid a criminal prosecution and a foreclosure action by Rowan Savings and Loan. Furthermore, the defendant John C. Schofield and wife, Victoria R. Schofield, did not divest themselves of all their property at that time and there was a reasonable prospect of creditors being paid out of the remaining property."

The court thereafter concluded that the two transfers on 6 April 1976 were invalid as to all creditors of John C. Schofield and his wife Victoria R. Schofield, and that Wurlitzer was entitled to have those deeds set aside and declared void. The court concluded

further that the transfer on 10 December 1974 was valid, and that Wurlitzer was entitled to no relief with respect to that transfer.

From a judgment declaring the two 1976 transfers invalid, defendants appeal. From a judgment declaring the 1974 transfer valid, plaintiff appeals.

*Brinkley, Walser, McGirt, Miller & Smith, by G. Thompson Miller, for plaintiff appellee and plaintiff appellant; and Stoner, Bowers & Gray, by Carl W. Gray, for Trustee in Bankruptcy for John C. Schofield.*

*Wilson, Biesecker, Tripp & Wall, by Joe E. Biesecker and Roger S. Tripp, for John C. Schofield defendant appellant and defendant appellee.*

*Robert M. Davis for John S. Schofield defendant appellant and defendant appellee.*

MORRIS, Chief Judge.

Under G.S. 39-15, a conveyance made with the intent to defraud creditors is void. A claim seeking to set aside a deed as a fraudulent conveyance can be established in accordance with legal principles set out in the landmark case of *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914), as applied in the recent case of *North Carolina National Bank v. Evans*, 296 N.C. 374, 250 S.E.2d 231 (1979):

> "(1) If the conveyance is voluntary, and the grantor retains property fully sufficient and available to pay his debts then existing, and there is no actual intent to defraud, the conveyance is valid.
>
> (2) If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors; but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution, which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally.
>
> (3) If the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, it is

void, although this fraudulent intent is not participated in by the grantee, and although property sufficient and available to pay existing debts is retained.

(4) If the conveyance is upon a valuable consideration and made with the actual intent to defraud creditors upon the part of the grantor alone, not participated in by the grantee and of which intent he had no notice, it is valid.

(5) If the conveyance is made upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the grantor, participated in by the grantee or of which he has notice, it is void." 296 N.C. at 376-77, 250 S.E. 2d at 233.

Those principles relating to the doctrine of fraudulent conveyances have been approved and applied in many recent decisions. *See, e.g., North Carolina National Bank v. Evans, supra; Everett v. Gainer,* 269 N.C. 528, 153 S.E. 2d 90 (1967); *Nytco Leasing, Inc. v. Southeastern Motels, Inc.,* 40 N.C. App. 120, 252 S.E. 2d 826 (1979); *Edwards v. Northwestern Bank,* 39 N.C. App. 261, 250 S.E. 2d 651 (1979); *Tuttle v. Tuttle,* 38 N.C. App. 651, 248 S.E. 2d 896 (1978), *cert. denied,* 296 N.C. 589, 254 S.E. 2d 32 (1979). Under the foregoing, in order to have the deeds in question set aside, the following must be shown:

(1) that the transfers were voluntary, and defendants either (a) did not retain property sufficient to pay their debts then existing or (b) made the transfers with the intent to defraud creditors; or

(2) that although the transfers were upon valuable consideration, they were made with the intent to defraud creditors on the part of the grantor, which was participated in by the grantee or of which the grantee had notice.

Applying these principles to the case at bar, we now consider specifically the question of whether the evidence presented at trial is sufficient to sustain the findings of fact and conclusions of law made by the trial court.

The question of the sufficiency of the evidence to support findings of fact made by the trial court is a proper subject for review on appeal. G.S. 1A-1, Rule 52(c) of the North Carolina Rules of Civil Procedure; *Brooks v. Brooks,* 12 N.C. App. 626, 184

S.E. 2d 417 (1971). Nevertheless, "[i]n that setting, the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams v. Pilot Life Insurance Co.*, 288 N.C. 338, 342, 218 S.E. 2d 368, 371 (1975); *Immanuel Baptist Tabernacle Church of the Apostolic Faith v. Southern Emmanuel Tabernacle Church, Apostolic Faith*, 27 N.C. App. 127, 218 S.E. 2d 223, *cert. denied*, 288 N.C. 730, 220 S.E. 2d 350 (1975); *Worthington v. Worthington*, 27 N.C. App. 340, 219 S.E. 2d 260 (1975), *cert. denied*, 289 N.C. 142, 220 S.E. 2d 801 (1976). A judgment based on such findings will not be disturbed on appeal, absent error of law appearing on the face of the record. *Wall v. Timberlake*, 272 N.C. 731, 158 S.E. 2d 780 (1968); *Fletcher v. Fletcher*, 23 N.C. App. 207, 208 S.E. 2d 524 (1974).

## Defendants' Appeal

[1]   As to the transfers on 6 April 1976, the trial judge found that the two conveyances were "voluntary, that is, without consideration", and that "there was no valid, subsisting debt which was paid by these transfers of property occurring on April 6, 1976." In North Carolina, a conveyance is deemed to be voluntary when it is without adequate consideration; i.e., "when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud." *L & M Gas Co. v. Leggett*, 273 N.C. 547, 549, 161 S.E. 2d 23, 25 (1968); *Bank v. Evans, supra*; *Supply Corp. v. Scott*, 267 N.C. 145, 148 S.E. 2d 1 (1966); *Nytco Leasing, Inc. v. Southeastern Motels, Inc., supra*. The evidence presented revealed that no money was passed from John S. Schofield and wife to John C. Schofield and wife at the time of the conveyances. Defendants argue that consideration did nevertheless exist in that the transfers served to satisfy a pre-existing debt owed by John C. Schofield to his father in the amount of approximately $83,000. On this point, the evidence shows that John S. Schofield could not recall how much money, if any, his son owed him at the time of the transfers; that the first time he ever attempted to determine the amount owed him by his son was in response to interrogatories served upon him by plaintiff; that John C. Schofield never signed a promissory note to reflect the monies owed to his father; that John C. Schofield's wife, Victoria

R. Schofield, never owed John S. Schofield any amount; that John S. Schofield never demanded any payment of the amount allegedly owed from his son. In his deposition, John S. Schofield stated that he had found a writing that reflected a $15,000 loan to his son, but such a document was never produced at trial. We view such evidence as sufficient to support the finding that a debt did not exist. Defendants rely on the case of *Hafner v. Irwin*, 23 N.C. 490 (1841), in which a conveyance to certain creditors was allowed to stand, the Court stating:

> "Every conveyance of property by an insolvent or embarrassed man, to the exclusive satisfaction of the claims of some of his creditors, has necessarily a tendency to defeat or hinder his other creditors in the collection of their demands. But if the *sole* purpose of such a conveyance be the discharge of an honest debt, it does not fall under the operation of the statute against fraudulent conveyances." 23 N.C. at 496.

In *Hafner*, the validity of the debt in question was not at issue. Indeed, it was admitted that the alleged debts were valid. In our case, however, the issue before the trial judge was specifically whether a debt existed sufficient to constitute consideration for the transfers in question. The trial judge considered the evidence and found facts accordingly. We conclude that there was sufficient evidence upon which the trial judge could have concluded that no honest debt existed.

[2] Defendants argue in addition that there was consideration to support the 1976 conveyances in that John S. Schofield assumed the liens upon property when conveyed to him. It is generally held that the assumption of a mortgage by a grantee constitutes consideration for the conveyance of property from an insolvent grantor, and in the absence of fraudulent intent, such a conveyance is binding. *See generally* 37 Am. Jur. 2d, Fraudulent Conveyances, § 22 (1968). The evidence on this point is at best confusing and contradictory. In any event, even assuming *arguendo* that the alleged assumption of mortgage constitutes consideration, we reject defendants' argument in light of the following.

Although an assumption can in other respects be considered adequate consideration for a conveyance, the grantee's inability to pay the mortgage debt assumed is generally sufficient to set aside the conveyance. *See Citizens Bank & Trust Co. v. White*, 12

Tenn. App. 583, --- S.W. --- (1930); *see generally*, Annot., 6 A.L.R. 2d 270 (1949). In this case, John S. Schofield's inability to pay the debts assumed is evidenced by his testimony as to his financial condition:

> "Well, the fact is: I'm all but practically busted myself. I had to spend a quarter of a million dollars myself in the last — let's see — since 1962; and being 67 February 2 coming up and I had retired, got broke, had to go back to work, and when you start getting up on a little bit of age, it's gotten to the point where you've got to get a little bit of protection on ourselves. The old bucket had run dry so to speak."

John S. Schofield's inability to assume the mortgages in question is supported also by the fact that John C. Schofield was the one actually making the payments on Davidson County property, as evidenced by this passage:

> "Johnny is living there in the home. Yes, he's paying me rent. He takes care of my payments and all. He takes care of the payments for me. I mean, he gives me enough to take care of the payments. Uh huh, he gives me enough so that I can pay the bank."

There are other possible inferences which could be drawn from the evidence presented at trial. However, the duty of this Court upon review of the sufficiency of evidence is a limited one. We are of the opinion that the evidence was supportive of the court's findings.

[3] Defendants argue next that there was no evidence of fraudulent intent sufficient to set aside the conveyances. Under *Aman*, although a conveyance is made by a debtor for valuable consideration, it is fraudulent and may be set aside when the conveyance is (1) made with the intent to defraud creditors, and (2) the grantee either participated in the intent or had notice of it. *Aman v. Walker, supra; Edwards v. Bank, supra.* The trial court found as a fact that the two transfers were made with fraudulent intent, and that the grantees participated in this intent. We view the evidence supportive of this finding as to John C. Schofield in that the transfers were made at a time when he owed a $60,000 debt to Wurlitzer; the transfers were made while a suit by Wurlitzer to recover the debt was pending; and John C. Schofield continued

to live in the home in Davidson County after the transfer of that property. This conclusion is bolstered by the fact that John C. Schofield was unable to show that he retained property sufficient to pay the debts to Wurlitzer, on which he certainly knew he was potentially liable. Intent to defraud creditors may be presumed when the debtor does not retain property sufficient to pay his then existing debts. *Edwards v. Bank, supra.* Moreover, we view the evidence supportive of a finding that John S. Schofield concurred in this fraudulent intent. The evidence showed that he had notice of his son's financial difficulties. Given the close relationship between the grantor and grantee evidenced in the record, and the circumstances surrounding the transfers, it is impossible for us to conclude that no inference could be drawn that would indicate knowledge and participation on the part of John S. Schofield. In a closely analogous case, *Morris v. Holland,* --- Mo. ---, 529 S.W. 2d 948 (1975), judgment creditors sought to set aside as fraudulent certain conveyances of real property from the defendant and his wife to defendant's father. The father testified that the consideration for the deed consisted of the cancellation of a pre-existing debt, the total of which represented a series of loans made to the son over a two-year period. After hearing the evidence, the trial court found that the property conveyed constituted virtually all of the son's property; that before and after the property was conveyed, the son was insolvent; that the father knew of the son's insolvency and accepted the deed in an attempt to "salvage" the property and to "get some of [the son's] indebtedness off me." The court, therefore, deemed the conveyance fraudulent and void. The Missouri Court of Appeals affirmed, holding that the record manifested several indicia of fraud:

> "The conveyance was made from son to father; the supposed consideration was forgiveness of or security for a debt which was at best merely a moral obligation to repay, and supposed assumption of a mortgage debt upon which the grantor continued to make payment after the transfer; defendant . . . testified that the land conveyed represented all the property he owned except a 'couple of thousand' equity in a home . . .; and . . . defendants failed to produce available evidence tending to prove that the grantee was a bona fide creditor of the grantor. A strong inference of fraud arises from the concurrence of these circumstances." 529 S.W. 2d at 953.

Upon the foregoing, we affirm the court's ruling in the present case that the transfers on 6 December 1976 constituted fraudulent conveyances and that those transfers be set aside.

## Plaintiff's Appeal

[4] Plaintiff Wurlitzer contends on appeal that the transfer of realty on 10 December 1974 was not based upon adequate consideration and should be deemed fraudulent. The trial court held that there was sufficient consideration for the transfers and that defendants John C. Schofield and his wife did not divest themselves of all their property at that time, there being a reasonable prospect of creditors being paid out of their remaining property.

The evidence presented at trial indicates that John S. Schofield and his son were jointly obligated on a note secured by the property in question; that John C. Schofield had made some of the mortgage payments out of the rental proceeds from the property; that during a period of 1974, six checks written by John C. Schofield in payment of that obligation were returned for lack of sufficient funds; that the mortgagee notified John S. Schofield that the property would be foreclosed unless full payment of the amount in arrears was made immediately; that John S. Schofield paid the amount in arrears; that thereafter the property was transferred to John S. Schofield and his wife in December, 1974; and that John S. Schofield made all payments thereafter.

There is conflicting testimony concerning the amount of equity in the property at the time it was transferred and as to the amount of consideration actually passing at the time of the conveyance. Nevertheless, we sustain the trial court's finding with respect to this transfer in that there was evidence that at the time of the transfer on 10 December 1974, there was a reasonable prospect on the part of defendants John C. Schofield and wife that there was sufficient property available out of which other debts could have been paid. At that time, John C. Schofield and wife still owned their home in Davidson County and an one-half interest in the Rowan County property. Further, there is no evidence to indicate that, as of 10 December 1974, a default had occurred with respect to defendants' obligation to Wurlitzer on the guaranty agreement entered into in 1973. Therefore, based on

the authority cited herein, we view the evidence as sufficient to sustain the trial court's findings of fact and conclusions of law as to the transfer on 10 December 1974.

Because there is competent evidence to support the trial court's findings of fact, and the findings support the conclusions of law, the judgment is

Affirmed as to plaintiff's appeal and

Affirmed as to defendants' appeal.

Judges PARKER and MARTIN (Robert M.) concur.