IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-993

Filed 6 August 2024

Davidson County, No. 18 CVS 2567

ANHUI OMI VINYL CO., LTD., Plaintiff,

v.

USA OPEL FLOORING, INC. f/k/a USA FLOORING IMPORTERS, INC. f/k/a USA OPEL FLOORING IMPORTERS, LLC, Defendant.

Appeal by defendant from order entered 6 March 2023 by Judge George C. Bell in Davidson County Superior Court. Heard in the Court of Appeals 16 April 2024.

> *Wyatt Early Harris Wheeler, by Donavan J. Hylarides, James R. Hundley, and Molly R. Ciaccio, for plaintiff-appellee.*

> *Williams Mullen, by Camden R. Webb and Killian K. Wyatt, for defendant-appellant.*

ZACHARY, Judge.

This case concerns the transfer of real property from Surface Source USA NC, Inc. ("Surface Source"), to Defendant USA Opel Flooring, Inc. ("Opel"). The trial court determined, *inter alia*, that this transfer was voidable as to Opel's creditor, Plaintiff Anhui Omi Vinyl Co. Ltd. ("Omi"), because the transfer "was done with the intent to hinder, delay, or defraud" Omi in contravention of the Uniform Voidable Transactions Act. *See* N.C. Gen. Stat. § 39-23.4(a) (2023). Opel appeals from the trial court's order entering judgment in favor of Omi in the amount of $1,139,971.21 plus interest. After

careful review, we affirm.

## I.   Background

Omi is a Chinese corporation that manufactures and exports luxury vinyl tile flooring to companies in the United States. One of Omi's customers was Surface Source, a North Carolina corporation that sold and distributed vinyl flooring from a building that it owned in Lexington, North Carolina (the "Surface Source Building"). Surface Source's President, CEO, Director, and Registered Agent Miao "Richard" Yu owned 10% of the stock of Surface Source. At all times relevant to this appeal, the Surface Source Building has been encumbered by a lien in favor of Davidson County, securing an economic-development loan from the county.

In 2017, Surface Source experienced financial difficulty and failed to pay more than $1,000,000.00 owed to Omi for goods sold and delivered to Surface Source. In March 2017, Yu directed Surface Source employees to form a new North Carolina corporation—Opel[1]—via LegalZoom.[2] Opel was formed to engage in the same business as Surface Source. Yu initially owned 60% of Opel's stock.

On 1 June 2017, Omi filed suit against Surface Source, alleging that Surface Source owed Omi more than $1,000,000.00 for goods sold and delivered. Surface

---

[1] When it was first incorporated, Opel was named "USA Flooring Importers, Inc." It has subsequently been renamed. For ease of reading, we refer to this corporation as "Opel" throughout.

[2] "LegalZoom.com provides an online legal portal to give visitors a general understanding of the law and to provide an automated software solution to individuals who choose to prepare their own legal documents." *LegalZoom Terms of Use*, LegalZoom https://www.legalzoom.com/legal/general-terms/terms-of-use (last updated Sept. 19, 2023).

Source actively defended Omi's suit, including filing an answer and counterclaim on 1 August 2017.

On 21 November 2017, Surface Source sold the Surface Source Building to Opel for $1,030,000.00 "plus additional consideration." At the time of the transfer, Opel was aware that the Surface Source Building was the only asset that Surface Source owned and that a secured creditor of Surface Source had already foreclosed on and sold all of Surface Source's other assets.[3] As the transaction was being finalized, Surface Source's new counsel sent a letter to Davidson County requesting that the county subordinate its deed of trust against the Surface Source Building to a new deed of trust. In the letter, Surface Source's counsel represented that Surface Source was "transitioning to a new entity" that would eventually become Opel and that the "new entity" would fulfill the existing loan obligations owed to the county. The signed subordination agreement was recorded on 29 November 2017 and identified Opel as the original borrower of the loan from Davidson County, rather than Surface Source.

That same day, Surface Source's attorneys filed a motion to withdraw from the Omi litigation, stating that Surface Source had terminated their representation agreement and obtained new counsel. Before Omi's lawsuit against Surface Source came on for trial, Surface Source's new counsel informed the court that no representative of Surface Source intended to appear at trial. Indeed, when the matter

---

[3] According to one of Opel's managers, Surface Source's secured creditor "even took the mop away."

came on for trial on 14 February 2018, no representative of Surface Source was present.

On 14 February 2018, the trial court entered judgment in favor of Omi in the amount of $1,139,971.21 plus interest. However, Omi was unable to collect on its judgment against Surface Source; the Davidson County Sheriff's Office returned Omi's writ of execution as unsatisfied because it "did not locate property on which to levy."

On 29 November 2018, Omi filed a complaint against Opel, alleging that Opel was liable to Omi in the amount of the judgment against Surface Source. Omi alleged that Opel was liable (1) as a "mere continuation" of Surface Source under the doctrine of successor liability or, in the alternative, (2) because the transfer of assets from Surface Source to Opel was a fraudulent transfer pursuant to the Uniform Voidable Transactions Act. On 28 January 2019, Opel filed its answer.

Omi filed a motion for summary judgment on 30 March 2021, and on 23 June 2021, Opel filed a motion for summary judgment as well. On 6 July 2021, the trial court entered an order denying both summary judgment motions.

On 5 December 2022, the matter came on for bench trial in Davidson County Superior Court. On 6 March 2023, the trial court entered an order concluding that the transfer of the Surface Source Building from Surface Source to Opel was voidable as a fraudulent transfer pursuant to N.C. Gen. Stat. § 39-23.4(a). The trial court alternatively concluded that Opel was a mere continuation of Surface Source and, as

such, was liable to Omi. Consequently, the trial court entered judgment in favor of Omi in the amount of $1,139,971.21 plus interest.

Opel filed timely notice of appeal.[4]

## II. Discussion

Opel argues on appeal that the trial court erred by entering judgment in favor of Omi on both theories of liability: fraudulent transfer and mere continuation.

## A. Standard of Review

"[W]hen the trial court sits without a jury, as it did in this case, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Cherry Cmty. Org. v. Sellars*, 381 N.C. 239, 251–52, 871 S.E.2d 706, 717 (cleaned up), *reh'g denied*, 382 N.C. 328, 873 S.E.2d 411 (2022). "A trial court's unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal. Otherwise, a trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *Id.* at 246, 871 S.E.2d at 714 (cleaned up). The trial court's supported findings are conclusive on appeal "even though the evidence might sustain findings to the contrary." *Wurlitzer Distrib. Corp. v. Schofield*, 44 N.C. App. 520, 526, 261 S.E.2d 688, 692 (1980) (citation omitted).

---

[4] In its notice of appeal, Opel initially appealed from the trial court's order denying its motion for summary judgment as well as the order entering judgment. During the settling of the record on appeal, Opel withdrew its notice of appeal, in part, as to the summary judgment order. The parties stipulated that Opel only appeals from the trial court's 6 March 2023 order entering judgment.

### B. Analysis

Opel contends that the trial court erred by concluding that "[t]he transfer of the Surface Source Building from Surface Source to [Opel] was done with the intent to hinder, delay, or defraud" Omi and that, therefore, the transfer was "voidable as to [Omi] under N.C. Gen. Stat. [§] 39-23.4(a)." We disagree.

### 1. *Applicable Legal Principles*

From "an early period in the judicial history of this State," North Carolina has recognized the voidability of fraudulent transactions. *Helms v. Green*, 105 N.C. 251, 259, 11 S.E. 470, 472–73 (1890); *see also* N.C. Gen. Stat. § 39-23.4 uniform law cmt. 1 (tracing lineage of the doctrine to "the Statute of 13 Elizabeth, c. 5 (1571)"). "The declared object in enacting 13 Eliz. was to avoid and abolish feigned gifts, grants, alienations, &c., which may be contrived and devised of fraud, to the purpose and intent to delay, hinder, and defraud creditors and others of their just and lawful actions and debts." *Helms*, 105 N.C. at 262, 11 S.E. at 474 (cleaned up).

Our Supreme Court has long recognized the general principle that a transaction tainted by the intent to defraud a creditor may be voidable as to that creditor:

> [T]he *whole* purpose of the parties to such conveyance must be the devotion of the property *bona fide* to the satisfaction of the preferred creditors, and no part of that purpose the hindering or delaying of creditors, except so far as such hindrance or delay is the unavoidable consequence of the preference so given. Every contrivance *to the intent* to hinder creditors—*directed to that end*—is "malicious" that

> is to say, wicked. . . . But if the hindrance of creditors form any part of the actual intent of the act done, so far the act is as against them a wicked or malicious contrivance—and it is not to be questioned that a conveyance or assurance, tainted in part with a malicious or fraudulent intent, is by the statute made void as against creditors *in toto*.

*Hafner v. Irwin*, 23 N.C. 490, 498 (1841).

Moreover, it is well established that the presence of certain "badges of fraud" may indicate that a transaction that is not void on its face may nevertheless be found to be voidable as fraudulent. *See State ex rel. Brown v. Mitchell*, 102 N.C. 347, 370, 9 S.E. 702, 703–04 (1889) ("[C]ertain combinations of the several badges of fraud . . . will raise a presumption of fraudulent intent, and make it incumbent on the party benefited by the alleged fraud to show the *bona fides* of the transaction.").

As articulated by our Supreme Court, these badges of fraud included:

> failure to register a conveyance required by law to be registered within a reasonable time after its execution; the embarrassment of a grantor and his failure to reserve sufficient property to satisfy his indebtedness; inadequacy of price; unusual credit given by one in failing circumstances; secrecy in the execution of a conveyance; the fact that one involved in debt makes a conveyance to a near relation.

*Id.* at 369, 9 S.E. at 703.

Consistent with this centuries-old precedent, the modern-day Uniform Voidable Transactions Act sets forth, in pertinent part, the following ground for determining that a transfer is voidable as fraudulent:

> (a) A transfer made or obligation incurred by a debtor is

> voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) With intent to hinder, delay, or defraud any creditor of the debtor . . . .

N.C. Gen. Stat. § 39-23.4(a)(1). This contemporary legislation "was not designed to permit those dealing in the commercial world to obtain rights by an absence of inquiry under circumstances amounting to an intentional closing of the eyes and mind to defects in or defenses to the transaction." *Cherry Cmty. Org.*, 381 N.C. at 247, 871 S.E.2d at 714 (citation omitted). Rather, the Act "renders voidable as to a creditor any transfer made or obligation incurred when that transfer—in this case, the conveyance of the subject property—is consummated by a debtor with the intent to defraud any creditor of the debtor." *Id.* (cleaned up).

When determining whether a transfer was made with the "intent to hinder, delay, or defraud any creditor of the debtor" under the Uniform Voidable Transactions Act, N.C. Gen. Stat. § 39-23.4(a)(1), the trial court may consider any of the following non-exclusive list of factors, which follow the spirit of the traditional badges of fraud:

> (1) The transfer or obligation was to an insider;
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor;

(12) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due; and

(13) The debtor transferred the assets in the course of legitimate estate or tax planning.

*Id.* § 39-23.4(b).

### 2. Badges of Fraud

In this case, the trial court made numerous findings of fact to support its conclusion that "[t]he transfer of the Surface Source Building from Surface Source to [Opel] was done with the intent to hinder, delay, or defraud" Omi and that, consequently, the transfer was "voidable as to [Omi] under N.C. Gen. Stat. [§] 39-

23.4(a)." The trial court's findings of fact, which Opel does not challenge on appeal and are thus binding, *Cherry Cmty. Org.*, 381 N.C. at 246, 871 S.E.2d at 714, include:

3. Surface Source's President and CEO was Miao "Richard" Yu (hereinafter "Yu"), who also owned 10% of Surface Source.

4. By 2017, Surface Source ran into financial difficulty and failed to pay more than $1,000,000 to Omi for goods sold and delivered to Surface Source.

5. In March 2017, Mr. Yu directed Surface Source employees to form a new company called USA Flooring Importers, Inc., which was done by employee Jason Reich through LegalZoom. Mr. Reich also assisted Mr. Yu in setting up a bank account for USA Flooring Importers, Inc.

6. USA Flooring Importers, Inc. later changed its name to USA Opel Flooring Importers, LLC, and then to [Opel] . . . .

7. Opel was formed to conduct exactly the same type of business that Surface Source was engaged in – distribution of vinyl flooring. Opel also operates its business out of the Surface Source Building.

8. At the time of . . . Opel's creation, Yu owned 60% of its stock.

9. On June 1, 2017, Omi filed suit against Surface Source in Wake County . . . for its outstanding debt. The Summons and Complaint were served on Mr. Yu as Surface Source's CEO.

10. At first, Surface Source actively defended the suit, even filing a counterclaim against Omi. However, on or about November 28, 2017, Surface Source abruptly ceased its defense when its legal counsel withdrew from the case. Surface Source did not appear at the trial of the case on February 14, 2018.

Omi was awarded a judgment against Surface Source in the amount of $1,1[39],971.21 on February 14, 2018 . . . . Omi then attempted to execute on its judgment against Surface Source, but the Writ of Execution was returned by the Davidson County Sheriff's Department unsatisfied.

11. While Omi's lawsuit against Surface Source was pending, Surface Source transferred the Surface Source Building to Opel in a transaction which closed on November 21, 2017. Opel had knowledge that Surface Source's only asset at that time was the Surface Source Building.

12. As a result of Surface Source's transfer of the Surface Source Building to Opel prior to Omi obtaining its judgement, Omi was not able to obtain a judgment lien against the Surface Source Building.

. . . .

14. When Surface Source transferred the Surface Source Building to Opel, Surface Source's attorney, Adam Gottsegen, sent Davidson County a letter requesting Davidson County to subordinate its deed of trust against the Surface Source Building to the new deed of trust in favor of Bank OZK, Opel's lender. The letter represented that Surface Source was "transitioning to a new entity . . . ." The Subordination Agreement, which Davidson County signed in reliance on the representation made in attorney Gottsegen's letter, identifies *Opel* as the "Borrower" which signed the original 2015 Note and Deed of Trust . . . in favor of Davidson County. . . . Opel has admitted it owes the debt under the loan to Davidson County.

Although the trial court did not specifically discuss the factors enumerated in N.C. Gen. Stat. § 39-23.4(b), these unchallenged findings of fact clearly implicate

several of those factors. Yu was the President, CEO, and 10% owner of Surface Source, and he directed Surface Source employees to form Opel—of which he also owned a percentage—and establish its bank account. *See* N.C. Gen. Stat. § 39-23.4(b)(1) (whether the transfer "was to an insider"). Surface Source transferred the Surface Source Building while the Omi suit was pending. *See id.* § 39-23.4(b)(4) (whether "the debtor had been sued or threatened with suit" prior to the transfer). And the transfer was made without Omi's knowledge. *See id.* § 39-23.4(b)(3) (whether "[t]he transfer or obligation was disclosed or concealed"); *see also Cherry Cmty. Org.*, 381 N.C. at 252–53, 871 S.E.2d at 718 (invoking N.C. Gen. Stat. § 39-23.4(b)(3) where the grantor "concealed its sale of the subject property" and where the grantor's "eventual disclosure to [its creditor] of the transfer was performed in order for [the grantor] to gain an advantage in the reactivated litigation").

In addition to those statutory badges of fraud, the trial court's findings of fact also invoke the badges of fraud present when a "debtor does not retain property sufficient to pay [its] then-existing debts." *Edwards v. Nw. Bank*, 39 N.C. App. 261, 272, 250 S.E.2d 651, 659 (1979). The trial court found as fact that the Surface Source Building was "Surface Source's only asset" at the time of the transaction, *see* N.C. Gen. Stat. § 39-23.4(b)(5) (whether "[t]he transfer was of substantially all the debtor's assets"), and Surface Source became insolvent upon the transfer of its only asset, *see id.* § 39-23.4(b)(9) (whether "[t]he debtor . . . became insolvent shortly after the transfer was made").

Opel does not challenge any of these findings of fact, which renders them binding on appeal. *Cherry Cmty. Org.*, 381 N.C. at 246, 871 S.E.2d at 714. Consequently, the existence of these "several badges of fraud" found by the trial court "raise[s] a presumption of fraudulent intent, and make[s] it incumbent on the party benefited by the alleged fraud to show the *bona fides* of the transaction." *Brown*, 102 N.C. at 370, 9 S.E. 703–04. This brings us to Opel's main argument regarding this issue: the Uniform Voidable Transactions Act's good-faith exception.

### 3. *The Good-Faith Exception*

Under the Uniform Voidable Transactions Act, even though a transfer is voidable as to a creditor against the transferor, the same transfer may not be voidable against the transferee under the good-faith exception. "A transfer or obligation is not voidable under [N.C. Gen. Stat. §] 39-23.4(a)(1) against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee." N.C. Gen. Stat. § 39-23.8(a). The party seeking to invoke the defense of § 39-23.8(a) bears the burden of proving the applicability of the good-faith exception. *Id.* § 39-23.8(g)(1).

Because the two elements of this exception—"a person that took in good faith *and* for a reasonably equivalent value"—are joined by the conjunctive "and," they must both be satisfied for the defense provided in § 39-23.8 to be applicable. *Id.* § 39-23.8(a) (emphasis added); *see also Lithium Corp. of Am., Inc. v. Town of Bessemer City*, 261 N.C. 532, 535, 135 S.E.2d 574, 577 (1964) ("Ordinarily, when the conjunctive

'and' connects words, phrases or clauses of a statutory sentence, they are to be considered jointly."). This, too, is in accord with our longstanding precedents, as it is well settled that a transfer for reasonable consideration may nonetheless be voidable when the transfer is not made in good faith. *See, e.g.*, *Aman v. Walker*, 165 N.C. 224, 227, 81 S.E. 162, 164 (1914) ("If the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the *grantor*, participated in by the *grantee*, or of which he has notice, it is void.").

Opel contends that the trial court erred by failing to apply the N.C. Gen. Stat. § 39-23.8(a) defense, because the transfer of the Surface Source Building was made in good faith and for reasonably equivalent value. In its appellate brief, Opel discusses many of the factors enumerated in § 39-23.4(b) that it claims "would have weighed heavily in favor" of a finding that the transfer to Opel was made in good faith. In so doing, however, Opel merely suggests that the trial court failed to make findings of fact that *could* have supported its position; Opel does not specifically challenge any of the findings of fact that the trial court *did* make in its analysis.

"Whether a party has acted in good faith is a question of fact for the trier of fact . . . ." *Cherry Cmty. Org.*, 381 N.C. at 247, 871 S.E.2d at 714 (citation omitted). By raising and discussing several of the other factors enumerated in N.C. Gen. Stat. § 39-23.4(b), about which the trial court made no findings of fact, Opel essentially asks this Court to impermissibly reweigh the evidence in the record so as to "sustain findings to the contrary" of the trial court's findings. *Wurlitzer*, 44 N.C. App. at 526,

261 S.E.2d at 692. This we cannot—and will not—do. Ours is merely to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Cherry Cmty. Org.*, 381 N.C. at 251–52, 871 S.E.2d at 717 (citation omitted). Opel does not challenge the substance of the trial court's findings of fact, which are thus binding on appeal, *id.* at 246, 871 S.E.2d at 714, and which in turn support the trial court's conclusion that the transfer of the Surface Source Building was voidable as to Omi, notwithstanding Opel's assertion of good faith. Therefore, the trial court's judgment "will not be disturbed" on this basis. *Wurlitzer*, 44 N.C. App. at 526, 261 S.E.2d at 692.

As discussed above, Opel bore the burden of establishing both elements of N.C. Gen. Stat. § 39-23.8(a) in order to avail itself of that statutory defense. *See* N.C. Gen. Stat. § 39-23.8(g)(1). Because the trial court's binding findings of fact support the conclusion that neither Surface Source nor Opel acted in good faith in transferring the Surface Source Building, we need not address whether the transfer was made for "reasonably equivalent value[.]" *Id.* § 39-23.8(a). "The facts, as found by the trial court, compel the imputation of knowledge to [Opel] of [Surface Source]'s fraudulent activities as [Opel] knew these activities to be fraudulent at the time of their commission," which consequently renders the transfer of the Surface Source Building to Opel "voidable as to [Omi] and thus denying [Opel's] ability, under these facts and circumstances, to be a good faith purchaser for value of the subject property." *Cherry*

*Cmty. Org.*, 381 N.C. at 255, 871 S.E.2d at 719.

In light of our holding regarding the fraudulent transfer, we do not reach Opel's challenge to the trial court's alternative conclusion that Opel was a mere continuation of Surface Source. *See Law Offices of Peter H. Priest, PLLC v. Coch*, 244 N.C. App. 53, 63 n.5, 780 S.E.2d 163, 169 n.5 (2015) (declining to reach arguments concerning the trial court's "alternative holdings" where one issue was dispositive), *disc. review and cert. denied*, 368 N.C. 689, 781 S.E.2d 479 (2016).

## C. Remedy

Finally, Opel alleges that the trial court's order "suffers from a fatal logical flaw." Opel asserts that "[v]oiding the transaction cannot permit Omi to recover because the [Surface Source Building] was fully encumbered to secured creditors who had priority over Omi." Not only is this assertion irrelevant, Opel misapprehends the nature of the relief that the trial court ordered.

The trial court did not, in fact, void the transfer of the Surface Source Building. The trial court merely entered "a judgment against [Opel] in an amount equal to [Omi]'s judgment against Surface Source." This is a remedy that the trial court is indisputably authorized to enter by statute. *See* N.C. Gen. Stat. § 39-23.8(b)(1).

Further, the fact that the Surface Source Building was encumbered by liens held by secured creditors does not create "a fatal logical flaw" in the trial court's order sufficient to mandate reversal. Rather, as Omi notes, the trial court's entry of judgment against Opel—in the same amount as Omi's judgment against Surface

Source—merely restores Omi to its status quo position: as a judgment creditor, no more and no less.

### III.  Conclusion

For the foregoing reasons, the trial court's order is affirmed.

AFFIRMED.

Judges COLLINS and FLOOD concur.